1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHEEDY DRAYAGE CO.,                               No. C-12-6204 EMC

          Petitioner,

    v.                                                      **ORDER GRANTING RESPONDENT'S
MOTION TO DISMISS**

TEAMSTERS UNION LOCAL NO. 2785,

          Respondent.                              **(Docket No. 10)**

_____/

## I.   INTRODUCTION

Respondent Teamsters Union Local No. 2785 ("Local 2785" or "the Union") brings the current motion to dismiss Petitioner Sheedy Drayage Company's petition to vacate in part the award of arbitrator Alan R. Berkowitz ("the Arbitrator"), which granted discharged Sheedy Drayage employee Clint Curtis reinstatement and backpay. In justifying his award, the Arbitrator relied on Sheedy Drayage's failure to comply with a provision in its collective bargaining agreement ("CBA") with Local 2785 requiring written notice of termination, despite Sheedy Drayage's contention that all of the parties acknowledged Curtis and the Union having received oral notice thereof. Sheedy Drayage subsequently petitioned this Court to vacate the Arbitrator's award, arguing that it contravenes California public policy. Local 2785 now moves to dismiss this petition on the grounds that it is untimely and that it fails to state a claim, and requests sanctions in the amount of its attorneys' fees expended in responding to the petition.

For the reasons stated herein, the Court **GRANTS** Local 2785's motion to dismiss.

United States District Court

For the Northern District of California

## II.   FACTUAL & PROCEDURAL BACKGROUND

The relevant facts underlying Sheedy Drayage's petition are largely undisputed.  Sheedy Drayage and Local 2785 were parties to a CBA covering the period between September 1, 2008 and June 30, 2012.  *See*  Notice of Removal Ex. B ("Pet. to Vacate"), Docket No. 1-1, ¶ 4; Notice of Removal Ex. D ("Perez Decl."), Docket No. 1-4, Ex. A ("CBA").  Relevant to the current proceeding, the CBA provides that "when an employee is removed from seniority, the Employer shall notify the Employee by certified mail and the Union by certified mail and facsimile, within ten (10) days from removal and that the removal may be subject to the grievance procedure herein contained."  *See* CBA § 4(C); Perez Decl. Ex. C ("Arbitration Award") at 2.  In addition, it provides for a grievance procedure culminating in arbitration whereby the Arbitrator is strictly bound by the terms of the CBA, such that he "shall have no authority to ignore, add to, subtract from, modify, or nullify the terms of [the CBA] in any way or render an award which is in conflict with any of the provisions of [the CBA]" and "his decision and award shall be based solely upon his interpretation of the meaning or application of the terms of [the CBA]."  *See* CBA § 7(C); Arbitration Award 2.

In November 2011, Sheedy Drayage terminated an employee, Clint Curtis, following his misconduct involving a customer.  *See* Pet. to Vacate ¶ 12; Arbitration Award 3-4.  It notified him orally in a meeting with a representative from the Union present.  Pet. to Vacate ¶¶ 13-14; Arbitration Award 5.  The Union filed a timely grievance, which culminated in a June 6, 2012 arbitration with the Arbitrator.  Pet. to Vacate ¶¶ 8, 15.  The Arbitrator served his decision on all parties by facsimile and mail on August 9, 2012.  *Id.* ¶ 10; Arbitration Award 9.  In his decision, the Arbitrator held that, although Curtis had engaged in "serious misconduct," he was entitled to reinstatement and backpay calculated from six months from his termination to the date of his reinstatement, effectively treating the misconduct as resulting in a six-month unpaid suspension.  *See* Arbitration Award 7-8.  The Arbitrator reached his decision on the grounds that Sheedy Drayage failed to comply with the written notice provisions of the CBA, reasoning that Sheedy Drayage was bound by this provision because "one party wanted it and 'bought and paid for it' in the course of collective bargaining" and that disregarding the written notice provision would "deprive the Union of the full benefit of its bargain."  *Id.* at 7.

**United States District Court**
For the Northern District of California

1    On August 22, 2012, thirteen days after the Arbitrator's decision, counsel for Sheedy

2    Drayage emailed the Arbitrator and "request[ed] that [he] further review and reconsider [his]

3    Decision and Award . . . ."  Perez Decl. Ex. E ("Email Request").  In particular, it argued that the

4    Arbitrator's award bore "no reasonable relationship" to Sheedy Drayage's failure to provide written

5    notice, especially in light of the fact that the Union filed a timely grievance notwithstanding such

6    failure.  *See id.*

7    Two days later, on August 24, 2012, the Arbitrator issued a "Ruling on Request for

8    Reconsideration" reaffirming his earlier decision and noting that Sheedy Drayage's email advances

9    "essentially the same arguments previously advanced by [Sheedy Drayage] and rejected," and that it

10   "does not point to any factual errors or omissions in the decision, nor does it offer any newly

11   discovered or previously unavailable facts."  Perez Decl. Ex. F ("Reconsideration Ruling"), at 2-3.

12   The Arbitrator noted that "the parties stipulated that the Arbitrator should retain jurisdiction to

13   resolve issues over remedy . . . ."  *Id.* at 2.

14   Sheedy Drayage subsequently filed its petition to vacate the arbitration award in San

15   Francisco Superior Court on November 29, 2012, ninety-seven days after the Arbitrator's "Ruling

16   on Request for Reconsideration."  *See* Pet. to Vacate.  The Union then removed Sheedy Drayage's

17   petition to this Court on December 7, 2012 and filed the current motion to dismiss on December 26,

18   2012.  *See* Notice of Removal, Docket No. 1; Mot. to Dismiss, Docket No. 10.

19                                   **III.   DISCUSSION**

20   The Union's motion to dismiss relies on two principal arguments: (1) that the petition to

21   vacate does not state a claim for relief; and (2) that Sheedy Drayage's petition to vacate was

22   untimely.  *See* Mot. to Dismiss 4-13.  In addition, the Union indicates in its reply brief that it seeks

23   attorneys' fees for having to oppose Sheedy Drayage's petition to vacate.  Reply, Docket No. 15, at

24   7-8.

25   ///

26   ///

27   ///

28   ///

United States District Court
For the Northern District of California

A.    Legal Standard

Section 301 of the Labor-Management Relations Act, 29 U.S.C. §185 ("section 301"), grants federal courts jurisdiction to vacate a labor arbitration award. *Sheet Metal Workers Ass'n, Local 206 v. R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758, 760 (9th Cir. 1988). "[J]udicial review of an arbitrator's decision 'is both limited and highly deferential.'" *Barnes v. Logan*, 122 F.3d 820, 821 (9th Cir. 1997) (quoting *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996)). "An award will not be set aside unless it manifests a complete disregard of the law." *Id.*

Under Federal Rules of Civil Procedure, Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

B.    Claim for Relief

Sheedy Drayage petitions the Court to vacate the underlying arbitration award on the grounds that it contravenes "well-defined and dominant public policy" in the form of three maxims of California jurisprudence enacted in 1872:  (1) that "[w]hen the reason of a rule ceases, so should the rule itself"; (2) that "[t]he law respects form less than substance"; and (3) that "[t]he law neither does nor requires idle acts." Opp'n 12-14; Cal. Civ. Code §§ 3510, 3528, 3532. In order to set aside an arbitration award based on public policy, "such public policy must be 'explicit,' 'well defined,' and 'dominant.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)). For example, the Supreme Court has repeatedly upheld arbitration decisions reinstating employees found to have used or possessed marijuana, finding such reinstatement to not violate any explicit, well-defined, and dominant public policy. *See id.* at 67; *United Paperworkers Internat'l Union v. Misco, Inc.*, 484

United States District Court

For the Northern District of California

1   U.S. 29, 44-45 (1987).  The public policy "must be a policy that bars *reinstatement*" and

2   "specifically militate[] against the relief ordered by the arbitrator."  *Stead Motors of Walnut Creek v.*

3   *Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1212-13 (9th Cir. 1989).

4            Thus, the primary question here is whether the maxims of jurisprudence cited by Sheedy

5   Drayage are the sort of explicit, well-defined, and dominant public policy that would justify vacating

6   the Arbitrator's award.  This question is not a close one.  California's maxims of jurisprudence are

7   not legal requirements, but rather "aid[s] in construing the proper application of common-law

8   principles or of code sections."  *Daniels v. McPhail*, 93 Cal. App. 2d 479, 482 (1949); *see* Cal. Civ.

9   Code § 3509; *see also Irwin v. City of Manhattan Beach*, 65 Cal. 2d 13, 21 (1966) (maxims of

10  jurisprudence "operate[] as an aid to the just application of statutory law . . . not as an inflexible rule

11  of construction.").  One commentator has referred to them as "nonbinding legal norm[s] that sum[]

12  experience and guide[] decisions without compelling decisions: the legal equivalent of Rawls'[s]

13  rule of thumb."  Melvin Aron Eisenberg, *Expression Rules in Contract Law & Problems of Offer &*

14  *Acceptance*, 82 Cal. L. Rev. 1127, 1140 (1994).  The maxims of jurisprudence are generally used by

15  courts simply to interpret common-law principles and code sections.  Sheedy Drayage does not point

16  to any source suggesting they be applied to contract interpretation by a private arbitrator.  In fact, its

17  sole authority discussing the maxims of jurisprudence, which labels them as being "in the nature of

18  public policy," *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 322 (1999) (Mosk,

19  J., dissenting), is located in dicta in a *dissent* discussing the appropriate remedy for a tort.

20           In any event, in no way do the maxims cited by Sheedy Drayage specifically militate against

21  an arbitration award reinstating Curtis.  *See Stead Motors*, 886 F.2d at 1212-13.  Even if the maxims

22  of jurisprudence were used in contract interpretation, they cannot override the intent of the parties in

23  forming the contract as embodied in the plain language of the contract.  *Cf. Moore v. Cal. State Bd.*

24  *of Accountancy*, 2 Cal. 4th 999, 1012 (1992) (court's objective to "ascertain and effectuate the

25  underlying legislative intent" overrides "any maxim of jurisprudence, if application of the . . .

26  maxim would frustrate the intent underlying the statute.").  Here, the Arbitrator made explicit

27  findings as to the parties' intent in including the written notice requirement in the CBA, noting that

28  "one party wanted it and 'bought and paid for it' in the course of collective bargaining."  Arbitration

United States District Court

For the Northern District of California

1  Award 7.  There are any number of reasons why parties might choose to require notice be in writing.

2  Besides providing fair notice, written notice serves the function of providing clear record-keeping

3  which could prevent disputes over the fact and timing of notice.  It is not for the Arbitrator to

4  override the plainly stated contractual provision based on some general maxim.

5  In sum, the Arbitrator's conclusion that the written notice provision of the CBA was

6  enforceable, notwithstanding the parties' actual notice of the termination, was not a "complete

7  disregard of the law," nor did it contravene "well-defined" and "dominant" public policy.  Thus the

8  Court **GRANTS** Local 2785's motion to dismiss Sheedy Drayage's petition.  *See Barnes*, 122 F.3d

9  at 821.

10  C.  Timeliness of Petition

11  The parties dispute whether the Federal Arbitration Act ("FAA"), which requires a petition

12  to vacate be served within three months of an arbitration decision, or the California Arbitration Act

13  ("CAA"), which requires a petition to vacate be served within one-hundred days of an arbitration

14  decision, applies.  *See* Mot. to Dismiss 4, 6-9; Opp'n to Mot. to Dismiss ("Opp'n"), Docket No. 12,

15  at 5-10.  In addition, they dispute the effect of Sheedy Drayage's email requesting reconsideration

16  and the Arbitrator's subsequent "Ruling on Request for Reconsideration" on the time period for

17  serving a petition to vacate.

18  1.  Applicable Law

19  First, the Court must determine whether the statute of limitations in the FAA or the statute of

20  limitations in the CAA applies.  In *San Diego County District Council of Carpenters of United*

21  *Brotherhood of Carpenters & Joiners of America v. Cory*, 685 F.2d 1137, 1139 (9th Cir. 1982)

22  (hereinafter, "*SDCDCC*"), the Ninth Circuit determined that *California's* one-hundred day limitation

23  period applied to petitions for review under section 301, pointing out that

> Congress did not enact a statute of limitations for section 301 of the
> Labor Management Relations Act.  When Congress does not provide a
> statute of limitations for a federal cause of action, we apply the forum
> state's statute of limitations unless it unduly qualifies or diminishes
> the federal right the cause of action seeks to protect.  The relevant
> state limitations period here is Cal.Civ.Proc.Code s 1288, which
> allows a party 100 days to petition to vacate an arbitration award.

United States District Court

For the Northern District of California

1   (citation omitted).  It ultimately concluded that, "while a uniform federal limitations period might be

2   desirable, neither national labor policy nor section 301's text or legislative history supports creating

3   one judicially."  *Id.* at 1142.

4          The Union urges the Court to depart from the rule set forth in *SDCDCC* given subsequent

5   opinions by the Supreme Court applying the FAA to arbitration of various workplace disputes.

6   However, these opinions do not hold that procedures outlined in the FAA are to apply to section 301

7   petitions to vacate.  *See e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (discussing motion to

8   compel arbitration under FAA where individual employee filed discrimination lawsuit despite CBA

9   arbitration provision); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (discussing motion to

10  compel arbitration under FAA where non-union employee filed discrimination lawsuit despite

11  arbitration agreement).  To be sure, *United Steel, Paper and Forestry, Rubber, Manufacturing,*

12  *Energy, Allied Industries and Service Workers International Union v. Wise Alloys, LLC*, 642 F.3d

13  1344, 1353 (11th Cir. 2011) (hereinafter *Wise Alloys*), recognized that "Section 301 does not contain

14  an independent statute of limitations" and that, "consequently, courts considering requests to vacate

15  an arbitrator's award have had to choose between applying the applicable state statute of limitations

16  or the most analogous federal statute of limitations -- in this case the [FAA]."  However, the court

17  proceeded to cite *SDCDCC* for the proposition that the Ninth Circuit applies the *state* statute of

18  limitations.

19         At best, the Union has pointed toward a steady drift in jurisprudence towards recognizing the

20  applicability of the FAA in ever broader contexts.  It has not, however, demonstrated that it has

21  supplanted the Ninth Circuit's longstanding law that petitions to vacate under section 301 are

22  governed by the CAA's one-hundred day statute of limitations.  Thus, the Court applies the one-

23  hundred day statute of limitations in the CAA.

24         2.      Calculation of Statute

25         Even under California law, the Union argues that the petition to vacate is untimely, as more

26  than one hundred days passed from the issuance of the arbitration award to the filing of the petition

27  to vacate, notwithstanding the Arbitrator's "Ruling on Request for Reconsideration."  *See* Mot. to

28  Dismiss 5-6.

Whether the statute of limitations began to run upon issuance of the arbitration award turns on whether the arbitration award was final and binding. "[A]n arbitration award that postpones the determination of a remedy should not constitute a 'final and binding award' reviewable under section 301." *Millmen Local 550, Un. Broth. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (hereinafter "*Millmen*"). "Where an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction 'indicates that the arbitrator did not intend the award to be final.'" *Orion Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 724 (9th Cir. 1991) (quoting *Millmen*, 828 F.2d at 1376-77). However, "the arbitrator need not complete the mathematical computations of the award for the award to be final and reviewable." *Millmen*, 828 F.2d at 1377.

For the proposition that the Arbitrator's original award was *not* a "final and binding award," Sheedy Drayage cites two unpublished opinions in the same case where the arbitrator had retained jurisdiction to "resolve disputed damages issues between the parties" and had thus "directed [the union] to submit an accounting and stated [the employer] could submit objections before he would issue a 'final determination.'" *Cal. Pac. Med. Ctr. v. SEIU*, 300 Fed. Appx. 471, 473 (9th Cir. 2008); *see Cal. Pac. Med. Ctr. v. SEIU*, No. C-06-4685 (SC), 2007 WL 81906, at *3 (N.D. Cal. Jan. 9, 2007). However, these cases reached this conclusion after *distinguishing* controlling law that "that awards not technically final will be considered final for the purpose of confirmation where the only thing left for the arbitrator to do is to 'complete the mathematical computations of the award," finding that the arbitrator, in that case, did not merely engage in "mathematical computations." *Cal. Pac. Med. Ctr.*, 2007 WL 81906 at *4 (quotation marks and citation omitted); *Cal. Pac. Med. Ctr.*, 300 Fed. Appx. at 473. Two other unpublished cases cited by Sheedy Drayage also held that an arbitration award was not final where the arbitrator had to do more than just a mathematical computation of the award. *See Elem Indian Colony of Pomo Indians v. Pac. Dev. Partners X, LLC*, No. C-09-1044 CRB, 2010 WL 2035331, at *4 (N.D. Cal. May 19, 2010) (interpreting *Millmen* to stand for the proposition that the "award was not final when the arbitrator retained jurisdiction over matters undecided on which the parties might not agree," and finding that "calculations of attorney's fees and Claimants' objections to them" rendered arbitration award not truly final); *Pac. Maritime*

*Ass'n v. ILWU, Local 8*, No. C-12-11000 SI, 2012 WL 29949062, at * (D. Or. Jul. 20, 2012) (finding arbitration award not final where union had appealed the award through arbitration appeal process and arbitration appeal was still pending).

Here, although the Arbitrator retained jurisdiction to resolve issues over remedy, this jurisdiction was essentially a mathematical calculation not subject to reasonable dispute.  Unlike in the cases cited by Sheedy Drayage, there were not undecided matters on which the parties might disagree.  His original arbitration award clearly specified that the remedy would be reinstatement and "[b]ack pay . . . to [Curtis] from a date six months after his termination until he is reinstated or waives reinstatement."  Arbitration Award 8.  Unlike in *California Pacific Medical Center*, this decision would not necessitate an accounting, but rather simple mathematical calculations based on the date of the reinstatement or waiver thereof.  Similarly, the remedy here is not subject to reasonable dispute or further determination.  In short, the Arbitrator's decision did not require resolution of any "substantive issue," and thus nothing prevented the arbitration award in this case from becoming a final decision subject to a petition under section 301.  *See Orion Pictures*, 946 F.2d at 724.  Accordingly, the statute began to run upon issuance of the original award.

Nevertheless, Sheedy Drayage urges that the Union waived its right to assert this argument by failing to assert that the Arbitrator did not have the authority to reconsider the award.  Opp'n 12. However, the only proof of such waiver is the Arbitrator's statement in his reconsideration ruling, issued only two days after the email requesting reconsideration, that "no party argues that [he] lack[s] authority to rule on [Sheedy Drayage's] request . . . ."  Reconsideration Ruling 2.  Sheedy Drayage has cited no law for the proposition that failure to raise an objection to an arbitrator's authority to reconsider a decision constitutes waive of the argument that the original decision was final, much less in circumstances like here, where the reconsideration was issued only two days after an informal email request.  *See* 31 C.J.S. *Estoppel & Waiver* § 88 (2012) ("A waiver does not arise from mere negligence, inadvertence or oversight . . . .").  Given that the Arbitrator's initial award was final, the statute of limitations for a petition to vacate the award would have expired one hundred days thereafter, on November 17, 2012 (or the next business day thereafter, November 19, 2012), well before Sheedy Drayage's November 29, 2012 petition to vacate the award.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Even if the Court were to equitably toll the statute of limitations to file a petition to vacate

2  for the two-day period during which the Arbitrator's reconsideration was pending, the petition

3  would still be untimely, as it was not filed until 112 days after the Arbitrator's initial award.  In fact,

4  the only way for Sheedy Drayage's petition to be timely would be if the Court were to employ its

5  request for reconsideration to effectively reset the clock on its statute of limitations.  However,

6  Sheedy Drayage cites no basis under the CAA or any other law for doing so.  In fact, such a finding

7  would run counter to basic policy considerations favoring finality and timely resolution of disputes

8  that undergird statutes of limitations, as a party seeking to vacate an arbitration award could wait

9  until the ninety-ninth day following service of the arbitration award and then requesting

10  reconsideration, thereby gaining another one-hundred days to petition to vacate the award.  Nothing

11  in the law cited by Sheedy Drayage authorizes such a perverse result.

12    In sum, even with the CAA's longer one-hundred day statute of limitations, Sheedy

13  Drayage's petition to vacate was untimely, providing the Court another ground for granting the

14  Union's motion to dismiss.

15  D.    Sanctions

16    In its reply brief, the Union requests attorneys' fees for having to respond to Sheedy

17  Drayage's petition to vacate.  Reply 7-8.  Federal Rule of Civil Procedure 11(b)(2) permits a court to

18  issue sanctions against counsel where a party's "claims, defenses, and other legal contentions are

19  [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or

20  reversing existing law or for establishing new law . . . ."  For example, in *CUNA Mutual Insurance*

21  *Society v. Office & Professional Employees International Union, Local 39*, 443 F.3d 556, 561-62

22  (7th Cir. 2006), the Seventh Circuit imposed Rule 11 sanctions on an employer who petitioned to

23  vacate an arbitration decision based on an interpretation that was "easy to follow," in light of

24  extensive circuit precedent discouraging challenges to arbitration awards.

25    Here, counsel for Sheedy Drayage has advanced a specious legal theory for overturning an

26  arbitration award that is clearly within the letter of the CBA.  It misleadingly cites a dissent for the

27  proposition that non-binding general maxims of jurisprudence are public policy meriting judicial

28  reversal of the arbitration -- the parties' agreed-to forum.  Moreover, its petition to vacate was

untimely.  As a result, the Union had to expend additional resources responding to the petition to vacate beyond what it had already expended in the arbitration.

The Court orders Sheedy Drayage to show cause as to why sanctions should not issue. Sheedy Drayage must respond with a brief no longer than ten pages within fourteen days of this order.  The Union may file a response of the same length within seven days of Sheedy Drayage's response, including evidence of fees and costs spent opposing Sheedy Drayage's petition to vacate. Sheedy Drayage may file a reply of no longer than five pages within seven days of the Union's response.

## IV.   CONCLUSION

In sum, the Court **GRANTS** the Union's motion to dismiss and dismisses the petition to vacate with prejudice and without leave to amend.  In addition, the Court orders Sheedy Drayage to show cause as to why sanctions should not issue.

This order disposes of Docket No. 10.

IT IS SO ORDERED.

Dated:  March 4, 2013

_____
EDWARD M. CHEN
United States District Judge